IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MARIA B. GAUTIER-FIGUEROA,

    Plaintiff;

v.

BRISTOL-MYERS SQUIBB PUERTO RICO, INC., et al.,

    Defendants.

**Civil No. 11-1155 (SEC)**

**OPINION and ORDER**

Pending before the Court is plaintiff María Gautier-Figueroa's motion to remand to state court. For the reasons set forth below, the motion is **DENIED**.

**Background**

Gautier-Figueroa sued Bristol-Myers Squibb Puerto Rico ("Bristol-Myers"), her former employer, under Commonwealth-law claims of breach of contract and tort in San Juan Superior Court (Civil No. KAC2010-1552 (803)). Her claims arise out Bristol-Myers's alleged failure to perform under the terms of a Severance Agreement between her and Bristol-Myers. Docket # 8, Exhibit 1. Bristol-Myers then removed the case to this forum. Docket # 1. Subsequently, Gautier-Figueroa moved to remand to the Commonwealth court. Docket # 12.[1]

According to Bristol-Myers, the Severance Agreement at issue is part of an ERISA "employee welfare benefit plan"; thus, Gautier-Figueroa's cause of action amounts to a claim for benefits under ERISA § 502(a)(1)(B), 29 U.S.C. 1132(a)(1)(B). Docket ## 1 at ¶ 3 and 15

---

[1] The following pleadings and motions are before the Court: Gautier-Figueroa's translated Complaint (Docket # 8, Exhibit 1), and attachments thereto (Docket # 6, Exhibit 1), Bristol-Myers's Notice of Removal (Docket # 1), Gautier-Figueroa's Motion to Remand Proceedings (Docket # 12), Bristol-Myers's Opposition thereto (Docket # 15), Gautier-Figueroa's Reply (Docket # 18), and Bristol-Myers's Sur-Reply (Docket # 21).

**CIVIL NO. 11-1155 (SEC)**                                                                 Page 2

at pp. 7-11. Bristol-Myers correspondingly concludes that this Court has concurrent jurisdiction with the Commonwealth courts, and removal was therefore proper. Docket # 1 at ¶ 4. Gautier-Figueroa responds that, as the complaint on its face does not make reference to ERISA, the well-pleaded complaint rule precludes removal. Docket # 12 at ¶¶ 22-35. Bristol-Myers accepts that the complaint does not refer to ERISA, but retorts that the "complete preemption" doctrine—an exception to the well-pleaded complaint rule—applies here. Docket ## 1 at ¶¶ 7-8 and 15 at pp. 2-5; Docket # 21. Gautier-Figueroa denies that her Severance Agreement constitutes an employee benefit plan. Docket ## 12 at ¶¶ 46-67 and 18 at ¶¶ 24-29. She further argues that, even if it does, ERISA's civil-enforcement provision cannot "completely preempt" general Commonwealth contract law that does not directly relate to or interfere with employee retirement plans. Docket ## 12, ¶¶ 36-45 and 18 at ¶¶ 4-17.[2]

This back-and-forth exchange boils down to two questions that the Court must resolve: (1) Is the Severance Agreement between Bristol-Myers and Gautier-Figueroa part of an employee benefit plan? (2) If so, does the "complete preemption" doctrine apply? Given that well-settled law answers the latter question, the Court will turn to it first, and then will address the former.

**Applicable Law and Analysis**

*The "complete preemption" doctrine*

Any civil action brought in a state court, founded on a claim arising under federal law, may be removed to the local district court, regardless of the citizenship or residence of the parties. 28 U.S.C. § 1441(b). A cause of action arises under federal law only "when the

---

[2] Gautier-Figueroa also presents arguments based on Commonwealth breach-of-contract law and the Severance Agreement's choice-of-law clause—arguments that no doubt will be important later in the litigation, but are neither here nor there at this juncture. Jurisdiction is the only issue presently before the Court.

**CIVIL NO. 11-1155 (SEC)**                                                                 Page 3

plaintiff's statement of his own cause of action shows that it is based upon" federal law. Louisville & Nashville R.R. Co. v. Mottley, 211 U.S. 149, 152 (1908); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987). Under this well-pleaded complaint rule, the fact that a defense to the plaintiff's cause of action may involve federal law is insufficient grounds for removal. Id. Furthermore, since federal preemption "is ordinarily a federal defense to the plaintiff's suit . . . it does not appear on the face of a well-pleaded complaint, and, therefore, does not authorize removal to federal court." Metro. Life, 481 U.S. at 63 (citation omitted).

Nevertheless, "Congress may so completely pre-empt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." Id. at 63-64.[3] The civil-enforcement provision of ERISA allows a plan beneficiary to sue in order "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). In lawsuits "relate[d] to any employee benefit plan," this civil-enforcement provision preempts state laws that do not directly regulate insurance, banking, or securities. ERISA § 514, 29 U.S.C. § 1144; Metro. Life, 481 U.S. at 62-63. And, most importantly, section 502(a)'s preemption is complete. Metro. Life, 481 U.S. at 66-67.

---

[3]As the Seventh Circuit has explained:

> [T]he phrase "complete preemption" has caused confusion . . . by implying that preemption sometimes permits removal. Unfortunately "complete preemption" is a misnomer, having nothing to do with preemption and everything to do with federal occupation of a field . . . . State law is "completely preempted" in the sense that it has been replaced by federal law—but this happens because federal law takes over all similar claims, not because there is a preemption defense.

Lehmann v. Brown, 230 F.3d 916, 919-20 (7th Cir. 2000).

**CIVIL NO. 11-1155 (SEC)**                                                                                    **Page 4**

*Gautier-Figueroa's severance benefits*

Whether severance benefits are provided under an employee benefit plan is significant: "a suit by a beneficiary to recover benefits from a covered plan . . . falls directly under § 502(a)(1)(B) of ERISA." Metro. Life, 481 U.S. at 62-63. Gautier-Figueroa admits that her Commonwealth-law claims arise under general contract and tort law, not under laws specifically related to insurance, banking, or securities. Thus, if her suit is, in essence, an action to recover benefits due to her under an employee benefit plan, then the case is properly in federal court. See id. at 66-67; Negrón-Fuentes v. UPS Supply Chain Solutions, 532 F.3d 1, 7 (1st Cir. 2008) ("Any claim replicating section 502(a) is a federal claim for jurisdictional purposes, whether substantial or not.").

As Gautier-Figueroa points out, ERISA preemption applies to "state laws relating to *plans*, rather than simply to *benefits*." Fort Halifax Packing Co., Inc. v. Coyne, 482 U.S. 1, 11 (1987) (emphasis original). This is because Congress intended to preempt state law to provide "a uniform set of administrative procedures governed by a single set of regulations" only insofar as the provision of benefits "requires an ongoing administrative program to meet the employer's obligation." Id.; see also Balestracci v. NSTAR Elec. & Gas. Co., 449 F.3d 224, 229 (1st Cir. 2006). "Only a plan embodies a set of administrative practices vulnerable to the burden that would be imposed by a patchwork scheme of regulation." Fort Halifax, 482 U.S. at 11-12. Thus, the Court turns now to the question of whether the Severance Agreement between Bristol-Myers and Gautier-Figueroa constitutes or arises under an employee benefit plan.[4]

Gautier-Figueroa attached to her complaint the notice of termination that she received from Bristol-Myers ("Termination Notice") (Docket # 6, Exhibit 1 at pp. 1-4); a severance pay

---

[4] The term "employee benefit plan" is defined in ERISA § 3, 29 U.S.C. § 1002. It includes plans that pay severance benefits. Fort Halifax, 482 U.S. at 7 n.5.

**CIVIL NO. 11-1155 (SEC)**                                                                                                                                   Page 5

worksheet ("Benefits Worksheet") (id. at pp.5-6); a standard-form Severance Agreement, signed by both parties (id. at pp. 7-10); and a letter from Beatriz Sanabria, director of human resources at Bristol-Myers ("H.R. Letter") (id. at p. 11). The H.R. Letter stated that there had been an error in calculating Gautier-Figueroa's benefits and notified her that payments would be suspended until she signed a new severance agreement—equal in all terms to the original Severance Agreement, except for the amount of her benefits. See Docket # 6, Exhibit 1 at pp. 12-25. Gautier-Figueroa refused, Bristol-Myers stopped paying her benefits, and this lawsuit ensued.

The language of these documents enlightens the Court as to the nature of the suit. The Termination Notice, Benefits Worksheet, Severance Agreement, and H.R. Letter refer to the "Bristol-Myers Squibb Puerto Rico, Inc. Severance Plan" ("Severance Plan") no fewer than eighteen times. The Termination Notice states in relevant part:

> Severance pay will be provided to you **in accordance with** the terms and provisions of the Bristol-Myers Squibb Company Puerto Rico, Inc. **Severance Plan and Summary Plan Description (the Severance Plan)**. . . .
> . . . Under the **Severance Plan**, payment of Basic Severance, Supplemental Severance, and eligibility to select Company-subsidized benefit continuation (Option I), are contingent upon your properly executing the General Release in the requisite time period. . . .
> . . . .
> . . . **Plan benefits** are described more fully in the **summary plan description** contained in the booklet "Description of Your Benefits."
> . . .

(emphasis added) (references to attachments omitted). Additionally, the Termination Notice, on the last page, includes the phone number for a "Savings and Pension Center" that Gautier-Figueroa could call if she "wish[ed] to review [her] benefit coverages, or if [she] ha[d] any questions." The Benefits Worksheet also makes clear that benefits due to Gautier-Figueroa would be provided through the Severance Plan, as does the Severance Agreement: "In consideration of the execution of and your compliance with this Agreement Bristol will offer

**CIVIL NO. 11-1155 (SEC)**                                                                 Page 6

you certain benefits, including, but not limited to: (i) Basic Severance pay **under the . . . Severance Plan** . . . ." Severance Agreement at ¶ 1 (emphasis added). The H.R. Letter begins:

> Dear Ms. Gautier,
>
> As you know, you have been receiving severance benefits under the Bristol-Myers Squibb Puerto Rico, Inc. **Severance Plan and Summary Plan Description ("the Plan")**. **The Plan** establishes a formula for the calculation of severance and conditions payments on the signature of a Separation and General Release Agreement ("Release Agreement"). We are enclosing a copy of **the Plan**, for your convenience.

(emphasis added). There are many additional references to the Severance Plan throughout the attachments.

As stated in her complaint, Gautier-Figueroa wants her benefit payments under the Severance Agreement to resume. According to the terms of the Severance Agreement and other documents that she attached to her complaint, those benefits arise under a Severance Plan. Moreover, as the above-cited documents indicate, the Plan is the kind of ongoing, centrally administered, bureaucratic behemoth whose beneficiaries Congress intended to innoculate from multifarious state legislation pursuant to its Commerce Clause powers. See Fort Halifax, 482 U.S. at 11-12; Balestracci, 449 F.3d at 229.

Gautier-Figueroa relies on Fort Halifax, Rodowicz v. Mass. Mut. Life Ins. Co., 192 F.3d 162 (1st Cir. 1999), and O'Connor v. Commonwealth Gas Co., 251 F.3d 262 (1st Cir. 2001), to argue that because her benefits were calculated once and for all upon her termination, her "severance package" (as Gautier-Figueroa refers to it) does not come within the terms of ERISA. Docket ## 12 at ¶¶ 46-49 and 18 at ¶¶ 24-29. But the severance packages involved in all three cases are distinguishable from the Severance Plan at issue here—those packages were all one-time payments available to a large number of company employees for a limited time period, and they did not require any sort of ongoing administration *of a plan*. See Fort Halifax,

482 U.S. at 5, 18-19; Rodowicz, 192 F.3d at 171-72, O'Connor, 251 F.3d at 264, 266-71. In Fort Halifax, the lump-sum severance payment was a one-time event triggered by a state law regarding plant closings, whereas in Rodowicz and O'Connor the severance benefits were provided as part of a one-time early retirement window. See id. The benefits in those three cases were not provided as part of a preexisting and *ongoing* severance plan, unlike here. See id. Moreover, Bristol-Myers has included the Severance Plan and Summary Plan Description as part of its opposition to Gautier-Figueroa's motion. Docket # 15, Exhibit 4. The Severance Plan provides, at page 12, that "[the] plan is designed to qualify as a severance pay arrangement within the meaning of Section 3(2)(B)(i) of ERISA," that is, as an "employee welfare benefit plan." See ERISA §§ 3(1) & 3(2)(B), 29 U.S.C. §§ 1002(1) & 1002(2)(B).

Hence, because she seeks to recover benefits due to her under the Severance Plan, Gautier-Figueroa's cause of action "falls directly under § 502(a)(1)(B) of ERISA." See Metro. Life, 481 U.S. at 62-63. Complete preemption therefore applies, and the removal to this Court was proper. See id. at 66-67; Negrón-Fuentes, 532 F.3d at 7.

**Conclusion**

For the reasons set forth above, Gautier-Figueroa's motion is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 20th day of June, 2011.

                                                                     s/ *SALVADOR E. CASELLAS*
                                                                     Salvador E. Casellas
                                                                     U.S. Senior District Judge