## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| MARIA B. GAUTIER FIGUEROA | |
| Plaintiff | CIVIL No. 11-1155 (SEC) |
| v. | ERISA |
| BRISTOL MYERS SQUIBB PUERTO RICO, INC., et al. | |
| Defendant | |

## MOTION TO DISMISS AMENDED COMPLAINT FOR PLAINTIFF'S FAILURE
## TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED

TO THE HONORABLE COURT:

COMES NOW, Bristol Myers Squibb Puerto Rico, Inc. ("Bristol"), through its undersigned counsel, and pursuant to Fed.R.Civ.P. 12(b)(6), respectfully requests the dismissal of the Amended Complaint for failure to state a claim upon which relief may be granted. In support of its request, Bristol respectfully states, alleges and prays as follows:

### I. PROCEDURAL AND FACTUAL BACKGROUND

1. On May 5, 2010, Bristol, through its Human Resources Director, Ms. Rosa Sanabria-Nazario ("Sanabria"), met with plaintiff, María Gautier ("Gautier"), to notify her that her employment at Bristol would be terminated effective on May 19, 2010. See Amended Complaint at 3, ¶¶ 12; see also Exhibit A.

2. Together with the written notice of termination, Gautier was informed about her eligibility to the severance benefits available under the Bristol Myers Squibb Puerto Rico, Inc. Severance Plan ("the Severance Plan"), subject to her signing of a General Release Agreement ("the Release Agreement"), which was also provided to her. See Exhibit B. Gautier was further provided with a Severance Pay Worksheet that stated that, in exchange for her signing of the Release Agreement, she would receive a total severance amount of $194,271.25, to be calculated as follows:

| "Basic Severance | $2,316.40 weekly x 2 weeks | = $4,632.80 |
| "Supplemental Severance | $8,245.15 weekly x 23 weeks | = $189,638.45 |
|  |  | Total = $194,271.25 |

See Amended Complaint at 3, ¶¶ 12-13; see also Exhibit C.

     3.     On May 13, 2010, Gautier signed the Release Agreement.  See Amended Complaint at 6, ¶ 35; see also Exhibit B.

     4.     Gautier received severance benefits from May 2010 through August 2010.  See Amended Complaint at 10, ¶ 63.

     5.     On July 14, 2010, Sanabria, on behalf of the Severance Plan's Administrator, sent another communication to Gautier indicating that her "supplemental severance" had been incorrectly calculated. Specifically, Gautier was informed that the correct amount of her "supplemental severance" was not $189,630.45, but instead $68,102.31 and, consequently, that the correct severance payment was $72,735.12, calculated as follows:

| "Basic Severance | $2,316.40 weekly x 2 weeks | = $4,632.80 |
| "Supplemental Severance | $2,960.97 weekly x 23 weeks | = $68,102.31 |
|  |  | Total = $72,735.12 |

Sanabria also sent a new General Release Agreement ("new Release Agreement") to Gautier and notified her that the Company would temporarily suspend her severance payments until she signed and returned the new Release Agreement, which contained the correct "supplemental severance" payment under the Severance Plan. If Gautier signed and returned the new Release Agreement, she would receive a lump sum payment of the suspended payments and continue Gautier's severance adjusted to the correct amount. Gautier was also informed that if she did not sign and return the new Release Agreement, she

would not receive any further severance payments. <u>See</u> Amended Complaint at 8-9, ¶¶ 46, 48-50, 53; <u>see also</u> Exhibit D.

6.      On August 23, 2010, Gautier, through counsel, sent a letter to Sanabria informing her refusal to accept the new Release Agreement, and requesting compliance with the original Release Agreement. <u>See</u> Amended Complaint at 11, ¶ 70; <u>see also</u> Exhibit E.

7.      On September 7, 2010, the Plan Administrator, through counsel, informed Gautier that her letter dated August 23, 2010 was being considered as her first level appeal under the Plan and requested Gautier, pursuant to the Summary Plan Description (SPD), to submit any additional comments, evidence or arguments in support of her appeal on or before November 24, 2010. Gautier was also informed that if she failed to provide the additional information requested by said date, her appeal would be deemed as perfected and decided on the basis of her August 23, 2010 communication. An additional copy of the Severance Plan and Summary Plan Description (SPD) was provided to Gautier through this letter. <u>See</u> Amended Complaint at 11-12, ¶¶ 71-72; <u>see also</u> Exhibit F.

8.      On October 1, 2010, Gautier, through counsel, replied to the Plan indicating, essentially, that her claim was not an appeal, but a breach of contract claim under the laws of Puerto Rico against Bristol Myers Squibb of Puerto Rico, and not a claim under ERISA nor under any plan. <u>See</u> Amended Complaint at 13, ¶¶ 78-79; <u>see also</u> Exhibit G.

9.      On October 6, 2010, the Plan Administrator replied back to Gautier indicating that the severance payments she had received were made under the Severance Plan, which is regulated by ERISA and which preempts local law. Gautier was also informed that the administrative claim review had to be exhausted before any claim could be filed before any court. Thus, the Plan Administrator requested Gautier to inform, within five (5) days, whether she would insist on not following the claim procedure under the Severance Plan. <u>See</u> Amended Complaint at 13, ¶ 80; <u>see also</u> Exhibit H.

10.      On November 23, 2010, the Plan Administrator sent another communication to Gautier indicating that it had not received any response to its October 6, 2010 communication, and consequently,

that it would deem Gautier's letter dated August 23, 2010 as her first level appeal under the Severance Plan. In addition, the Plan Administrator asked Gautier once again to submit any additional information in support of her position on or before November 24, 2010. Finally, the Plan Administrator informed Gautier that it would need until February 22, 2011 to render its decision. See Exhibit I.

11.     On December 30, 2010, with her first level appeal still under consideration before the Plan Administrator, Gautier filed a Complaint before Puerto Rico's Court of First Instance, San Juan Superior Court, entitled María B. Gautier Figueroa v. Bristol Myers Squibb Puerto Rico, Inc., et al, Civil Number KAC2010-1552 (803).[1] See Amended Complaint at 13, ¶ 81.

12.     On February 11, 2011, Bristol filed a Notice of Removal. In essence, Bristol argued that removal of the present action was proper inasmuch as Gautier's cause of action constituted a claim for benefits under the Severance Plan pursuant to § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), and as such, was completely preempted. See Dkt. 1.

13.     On March 10, 2011, Gautier filed a motion to remand the case to the local state court. In essence, Gautier argued that her claim was a breach of contract claim under the laws of Puerto Rico and not an ERISA claim. See Dkt. 12.

14.     On June 20, 2011, this Honorable Court denied Gautier's motion to remand. Specifically, the Court acknowledged that the benefits requested by Gautier arose under the Severance Plan and, consequently, that Gautier's cause of action "f[ell] directly under    502(a)(1)(B) of ERISA." Consequently, the Court held that ERISA's complete preemption doctrine applied and that removal to this Court had been proper.  See Dkt. 22.

15.     On June 30, 2011, Bristol filed a motion to dismiss for failure to exhaust administrative remedies.  See Dkt. 24. Said motion is still pending resolution from this Honorable Court.

16.     In response to Bristol's motion to dismiss, on August 10, 2011, Gautier filed an Amended Complaint.  See Dkt. 32.

---

[1]   Plaintiffs' claims under ERISA may only be asserted against the Plan Administrator, in this case, Bristol-Myers Squibb Company c/o Senior Vice President,

17.     On August 11, 2011, Gautier filed a motion requesting the issuance of summons, see Dkt. 35, which was denied by this Honorable Court on that same date.  Gautier's Amended Complaint was also struck from the record as the Court found that she had not complied with Fed.R.Civ.P. 15(a)(2).  See Dkt. 36.

18.     However, Gautier immediately filed a Motion for Reconsideration alleging, in essence, that, inasmuch as Bristol had not filed an answer to the complaint, but, rather, a motion to dismiss, she was entitled to amend the complaint without leave from Court.  Gautier also argued that on July 18, 2011, the Court had held in abeyance the deadlines of the Case Management Order ("CMO") pending its resolution of the Bristol's motion to amend or alter the CMO (Dkt. 25) and, consequently, she thought in good faith that she could file the Amended Complaint without leave from Court. Finally, Gautier argued that, in light of Bristol's allegations, she was entitled to amend the complaint because the same had been originally drafted  as a breach of contract claim to be filed before the state court.  See Dkt. 37.

19.     Upon Gautier's motion for reconsideration, the Court ordered Bristol to show cause as to why the it should not grant Gautier leave to amend the Complaint.  See Dkt. 38.

20.     On August 23, 2011, Bristol filed its motion to show cause, see Dkt. 42, which was followed by Gautier's response and Bristol's reply, respectively.  See Dkts. 46 and 50.

21.     On November 4, 2011, this Honorable Court, *sua sponte*, ordered Bristol to show cause as to why it should not reconsider its order denying plaintiff's motion to remand.  See Dkt. 51.

22.     On November 11, 2011, Bristol filed its motion to show cause as to why this Honorable Court should not reconsider its denial of Gautier's motion to remand.  See Dkt. 56, Exhibit A and B.  This Honorable Court is yet to rule on Bristol's motion to show cause.

23.     On November 21, 2011, this Honorable Court granted Gautier's motion for reconsideration and allowed her Amended Complaint.  See Dkt. 58.

24.     On November 23, 2011, Gautier filed the Amended Complaint.  See Dkt. 59.  Plaintiff's Amended Complaint contains a plethora of causes of action under ERISA and under state law.  As will be

shown below, however, plaintiff did not exhaust administrative remedies prior to filing her complaint. Moreover, as to her state law claims, the same are either completely preempted by ERISA or their statutes of limitations have already expired.  As to the causes of action under ERISA, other than the one for benefits under the Severance Plan, which was not even framed as such, the same are not available. For the reasons set forth below, Bristol respectfully requests this Honorable Court to dismiss Gautier's Amended Complaint for failure to state a claim upon which relief may be granted, pursuant to Fed.R.Civ.P. 12(b)(6).

## II.  DISCUSSION

### A. DISMISSAL UNDER FED.R.CIV.P. 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action based solely on the pleadings if the plaintiff  "fail[s] to state a claim upon which relief can be granted." Fed.R.Civ.P. 12(b)(6). In assessing a motion to dismiss, the Court must "accept as true the factual averments of the complaint and draw all reasonable inferences therefrom in the plaintiffs' favor." Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 62 (1st Cir.2004) (citing LaChapelle v. Berkshire Life Ins. Co., 142 F.3d 507, 508 (1st Cir.1998)); see also Wash. Legal Found. v. Mass. Bar Found., 993 F.2d 962, 971 (1st Cir.1993). To survive a motion to dismiss, the complaint must allege "a plausible entitlement to relief." Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007); see also N.J. Carpenters Pension & Annuity Funds v. Biogen Idec Inc., 537 F.3d 35, 44 (1st Cir. 2008).  Motions to dismiss based on grounds of exhaustion of administrative remedies and preemption are reviewed under a 12(b)(6) failure to state a claim standard. See Fernandez-Vargas v. Pfizer Pharmaceuticals, Inc., 394 F.Supp.2d 407, 411 (D.P.R.2005); see also Fitzgerald v. Harris, 549 F.3d 46, 52 (1st Cir. 2008)("Preemption issues are ones of law, not of fact, and are amenable to resolution by a motion to dismiss the complaint.").

### 1.   The Court may consider Bristol's exhibits as part of the R.12(b)(6) inquiry

When ruling on a Rule 12(b)(6) motion to dismiss, a district court is generally limited to considering "facts and documents that are part of or incorporated into the complaint." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir.2008). Exhibits attached to the complaint are properly considered part of the pleading "for all purposes," including Rule 12(b)(6). Fed.R.Civ.P. 10(c); Blackstone Realty LLC v. FDIC, 244 F.3d 193, 195 n. 1. (1st Cir. 2001). Additionally, the Court of Appeals for the First Circuit has noted that "[w]hen ... a complaint's factual allegations are expressly linked to-and admittedly dependent upon-a document (theauthenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir.1998); see also Clorox Co. P.R. v. Proctor & Gamble Comm. Co., 228 F.3d 24, 32 (1st Cir.2000) (holding that, in ruling on a Rule 12(b)(6) motion, a district court " 'may properly consider the relevant entirety of a document integral to or explicitly relied upon in the complaint, even though not attached to the complaint' ") (quoting Shaw v. Digital Equip. Corp., 82 F.3d 1194, 1220 (1st Cir.1996))).

In Watterson v. Page, 987 F.2d 1 (1st Cir. 1993), the Court of Appeals for the First Circuit explained that the main problem of looking to documents outside the complaint - lack of notice to plaintiff - is dissipated "[w]here plaintiff has actual notice ... and has relied upon these documents in framing the complaint". Id. at 3-4. To such effects the "courts have made narrow exceptions [to the rule which prohibits consideration of documents not attached to the complaint in a motion to dismiss under Rule 12(b)(6)] for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint. Id. at 3-4 (citing Romani v. Shearson Lehman Hutton, 929 F.2d 875, 879 n. 3 (1st Cir.1991) (considering offering documents submitted by defendants with motion to dismiss claim of securities fraud). Moreover, in Fudge v. Penthouse Int'l, Ltd., 840 F.2d 1012 (1st Cir.), cert. denied 488 U.S. 821

(1988), the Court of Appeals for the First Circuit considered an allegedly libelous article submitted by defendants with a motion to dismiss. In so doing, it held as follows:

> Although "there is no requirement that the pleader attach a copy of the writing on which his action or defense is based[,] ... when plaintiff fails to introduce a pertinent document as part of his pleading, defendant may introduce the exhibit as part of his motion attacking the pleading."

Id. at 1015 (citing Wright & Miller, Federal Practice and Procedure § 1327 at 489 (1969)).

As part of the present motion, Bristol is submitting nine (9) exhibits, which are all sufficiently referred to by Gautier in her Amended Complaint,[2] and whose authenticity is not disputed. The factual contentions of plaintiff's complaint "are expressly linked to" the exhibits submitted by Bristol, whose authenticity cannot be reasonably challenged. Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir.1998). Therefore, although not attached to the Amended Complaint, this Honorable Court may consider Bristol's exhibits as part of the present motion to dismiss in order to "properly consider the relevant entirety of the documents integral to or explicitly relied upon in the complaint". Clorox Co. P.R. v. Proctor & Gamble Comm. Co., 228 F.3d 24, 32 (1st Cir. 2000). In light of the preceding discussion, Bristol respectfully requests this Honorable Court to accept the exhibits as part of the motion to dismiss.

## B. PLAINTIFF'S CAUSES OF ACTION

Section 502(a)(1)(B) of ERISA empowers a participant or beneficiary to bring suit to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan. 29 U.S.C. § 1132(a)(1)(B). Section 502(a)(3) allows a participant, beneficiary, or fiduciary to sue to (A) enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) obtain other appropriate equitable relief (I) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan. 29 U.S.C. § 1132(a)(3). As this Court is aware, Gautier's complaint arises from the suspension of her severance benefits under the Bristol Myers-Squibb Puerto Rico Inc., Severance Plan and Summary Plan Description (the "Severance Plan"). In essence, she objects the Plan Administrator's decision to

suspend her severance benefits due to a mistake in the computation of her severance benefits, which, in turn, resulted in an overpayment of benefits. Gautier, on the other hand, claims that she was offered a total severance amount of $194,271.26, but that she only received $88,936.42 before her benefits were suspended. Thus, Gautier is claiming the difference allegedly due to her, *i.e.*, $105,334.34.  While she insists in framing her complaint as a state law claim for breach of contract, along with a new plethora of causes of action, the fact remains that Gautier's suit is one to recover benefits allegedly due to her under the terms of the Severance Plan, a claim that is completely preempted by ERISA.  As the Court stated in its Opinion and Order denying Gautier's motion to remand, "Gautier-Figueroa's cause of action "falls directly under § 502(a)(1)(B) of ERISA." See Dkt. 22 at 7.

Bristol contends that Gautier's obstinacy in framing her complaint as a state law claim for breach of contract, despite the Court's order finding that her cause of action "falls directly under §502(a)(1)(B) of ERISA", warrants the dismissal of the instant case for failure to state a claim upon which relief may be granted.  In any case, as will be shown below, the remedies requested by Gautier are also preempted or not available under ERISA.  Consequently, each count of Gautier's Amended Complaint should be dismissed for failure to state a claim upon which relief may be granted.

### 1. THE CLAIMS FOR BREACH OF CONTRACTUAL OBLIGATION, COLLECTION OF MONEY AND CONTRACT NULLIFICATION ARE PREEMPTED BY ERISA

Bristol will discuss jointly Gautier's causes of action for breach of contractual obligation, collection of money and contract nullification, since the argument for their dismissal is, essentially, the same, *i.e.* ERISA preemption.

Gautier's claim for breach of contract is, in essence, a claim for benefits allegedly due to her under the Severance Plan, pursuant to section 502(a)(1)(B) of ERISA. However, as stated above, she insists in framing it as state law claim for breach of contract.  In any case, Gautier claims that she signed a Severance Agreement upon which she would receive $194,271.26 in severance benefits.  She alleges that she only received $88,936.42 and is, thus, claiming the difference of $105,33.84, plus interests.

---

[2]  Contrary to the original Complaint, which itself contained 5 attachments, the Amended Complaint has no attachments.

As to her claim for collection of money, Gautier seeks the difference of $105,334.34 allegedly due to her under the terms of the Severance Plan, and an additional $500,000.00 for damages allegedly suffered as a result of the suspension of her benefits.  See Amended Complaint at 16, ¶ 99.

As to her claim for contract nullification, the same is an alternative claim, as Gautier herself describes it.  See Amended Complaint at 16, ¶ 101.  In essence, Gautier claims that since Bristol allegedly retracted from the agreements set forth in the Severance Agreement, all the waivers she gave in said Agreement should be lifted and left without effect.

These three causes of actions are preempted by ERISA section 514(a), ERISA's preemption clause, which provides that ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. §1144(a).  The term "State law" includes "all laws, decisions, rules, regulations, or other State action having the effect of law, of any State." 29 U.S.C. § 1144(c)(1); see also Shaw v. Delta Air Lines, 463 U.S. 85, 92 (1983). Puerto Rico is considered a state for ERISA purposes. 29 U.S.C. §1002(10); see Rosario-Cordero v. Crowley Towing & Transp. Co., 46 F.3d 120, 122 (1st Cir. 1995). The First Circuit Court of Appeals has stated that "ERISA preemption is, as a general matter, expansive in scope." Rosario-Cordero, 46 F.3d at 122 (quoting Mc Coy v. Massachusetts Inst. of Technology, 950 F.2d 13, 16 (1st Cir. 1991)).

Subject to some exceptions, ERISA preempts any state cause of action that relates to an ERISA plan. Danca v. Private Health Care Sys., 185 F.3d 1, 7 (1st Cir. 1999); 29 U.S.C. § 1144(a)-(b). A state cause of action relates to an ERISA plan "if it has a connection with or reference to such a plan." Metropolitan Life Ins. Co. v. Mass., 471 U.S. 724, 739 (1985) (quoting Shaw v. Delta Air Lines, 463 U.S. 85, 96-97 (1983). Moreover, a state cause of action may relate to an ERISA plan "even if the [state cause of action] is not specifically designed to affect ERISA plans and even if its effect is indirect." Rosario-Cordero v. Crowley Towing & Transp. Co., 46 F.3d 120, 122-23 (1st Cir. 1995)(citing D.C. v. Greater Wash. Bd. Of Trade, 506 U.S. 125, 129-30 (1992)).

In the case at bar, it is clear that Gautier's claim for breach of contract, collection of money and

contract nullification "relate to" the Severance Plan.   After all, Gautier is claiming the difference allegedly due to her under the terms of the Severance Plan, i.e., the $105,334.34, or, in the alternative, that the Severance Agreement be nullified or left without effect.   These three claims necessarily require reference to and analysis of the Severance Plan. Accordingly, Gautier' state law claims against Bristol for breach of contract, money collection and contract nullification are preempted by section 514(a) of ERISA and should be dismissed with prejudice.[3]

## 2.  THE CLAIM FOR DISCRIMINATION BASED ON AGE/SEX IS TIME-BARRED AND THE COURT LACKS SUPPLEMENTAL JURISDICTION

Gautier also brings a cause of action under Puerto Rico Act No. 100 of June 30, 1959, 29 Laws of P.R. Ann., Tit. 29, §§ 145 et seq. (Act. 100), for alleged discrimination based on age/sex. Specifically, Gautier claims that after she was discharged, she was replaced by a man with less seniority than her and that Bristol retained much younger employees, with less seniority than her, in similar positions.   See Amended Complaint at 19, ¶ 122.  As a remedy, Gautier seeks $150,000.00 per year in lost salaries and benefits, and also $1 million dollars in emotional damages. Id., ¶¶ 124-125.

Gautier's claim for discrimination under Act 100 is time barred, inasmuch as she was terminated effective on May 19, 2010 and she did not file her claim within the one (1) year statute of limitations. The Supreme Court of Puerto Rico has held that the one-year statute of limitations found in Article 1868 of the Puerto Rico Civil Code applies to Law 100 claims. Olmo v. Young & Rubican of P.R., Inc., 110 D.P.R. 740 (P.R. 1981); Matos Ortiz v. Commonwealth of Puerto Rico, 103 F.Supp.2d 59, 63-64 (D.P.R. 2000). A cause of action under Law 100 accrues on the date that the employee becomes aware of the adverse personnel action either through notification by the employer, see Cardoza-Rodríguez, 113 F.3d at

---

[3] See e.g. Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44 (1987) (holding that ERISA preempts Plaintiff's suit under state law for the alleged improper processing of his claim for benefits under the ERISA regulated benefit plan); Hampers v. W.R. Grace & Co., 202 F.3d 44, 51 (1st Cir. 2000) (holding that Plaintiff's state law contract claim alleged the same conduct as in the ERISA claim and was therefore preempted); Turner v. Fallon Cmty. Health Plan, Inc., 127 F.3d 196, 197-98 (1st Cir. 1997)(finding that Plaintiff's state breach of contract claim fell within ERISA's enforcement provisions); Escobar Galíndez v. Ortho Pharmaceutical, 328 F.Supp.2d 213, 230-31 (D.P.R. 2004)(finding that Plaintiffs' breach of contract and tort claims for the alleged wrongful denial of health care and disability benefits required the court to evaluate and interpret the ERISA regulated plan and were preempted); Alamo Rodríguez v. MCS Life Ins. Co., 283 F.Supp.2d 459, 467-68 (D.P.R. 2003)(holding that ERISA preempted Plaintiff's claims under Article 1802 of the Puerto Rico Civil Code).

124-125, or the effectuation of the decision.  See Landrau-Romero v. Banco Popular de Puerto Rico, 212 F.3d 607, 615 (1st Cir. 2000).  Gautier asserted her claim for discrimination for the first time on her Amended Complaint filed on August 10, 2011, outside the one-year period.  Consequently, Gautier's claim for discrimination pursuant to Act 100 is time-barred.

In addition, this Honorable Court lacks supplemental jurisdiction over Gautier's claim for discrimination since it does not derive from the same common nucleus of operative facts as her claim for benefits under the Severance Plan. United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966).  28 U.S.C. § 1367(a) provides "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." The federal and state claims must "derive from a common nucleus of operative fact." United Mine Workers v. Gibbs, 383 U.S. 715, 725 (1966); Confederación Laborista de P.R. v. Cervecería India, Inc., 607 F.Supp. 1077, 1081 (D.P.R. 1985). See also, Frial v. Kaiser Permanente, 2010 WL 1838177, *2, n. 1 (C.D. Cal., 2010) ("the dissimilarity between the state law claims and the hypothetical ERISA claim, renders the exercise of supplemental jurisdiction imprudent".) In this case, Gautier's claim for benefits under the Plan (which she has refused to set forth as an ERISA claim, notwithstanding the Court's order) and her alleged claim of age/sex discrimination do not derive from a common nucleus of operative facts.  Gautier's claim for benefits due under the ERISA-governed Severance Plan is independent from her claim for discrimination under Act 100, as they involve different issues and questions of law and fact. For example, the time frame of plaintiff's claim under Act 100 is different than the time frame of her claim for benefits under the Plan. To those effects, plaintiff's termination was on May 19, 2010, while the facts regarding both the receipt and the suspension of her severance benefits occurred months after her termination. Consequently, Bristol submits that the Court should decline to exercise supplemental jurisdiction over Gautier's claim for discrimination under Act 100.

Moreover, as will be discussed below, Bristol is not the proper party defendant in Gautier's claim for benefits under the Severance Plan, because Bristol is not the Plan Administrator. Consequently, the proper party defendant of Gautier's only federal claim is the Plan Administrator and, thus, this Honorable Court cannot exercise supplemental jurisdiction over Gautier's claim under Act 100, whose proper party defendant is Bristol, not the Plan Administrator.

In view of the above, Bristol respectfully requests this Honorable Court to find that Gautier's claim for discrimination pursuant to Act 100 is time-barred and/or that the Court lacks supplemental jurisdiction to entertain the same.

### 3.  THE UNJUSTIFIED DISMISSAL CLAIM IS PREEMPTED BY ERISA

As in the case with Gautier's claims for breach of contract, money collection and contract nullification, ERISA's preemption defense bars Gautier's claim for unjustified dismissal.  Section 514(a) of ERISA provides that: ". . . the provisions of [ERISA] shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan . . . "29 U.S.C. §1144(a) (emphasis added). The term "State Law" includes all the laws, decisions, rules, regulations, or other state actions having the effect of law of any State.  29 U.S.C. § 1144(c)(1).

The Supreme Court has construed the above cited section as covering a law that "relates to" an employee benefit plan…, if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (emphasis added).

In this regard, it has been stated that:

Because ERISA applies to the benefit plans at issue here, plaintiffs' state law claim for benefits under the plans is preempted. 29 U.S.C. § 1144(a). The Supreme Court has held that ERISA's "preemptive force 'is so powerful as to displace entirely any state cause of action...' " Pilot Life Insurance Co. v. Dedeaux, 481 U.S. 41, 44 (1987)(quoting Franchise Tax Bd. v. Construction Laborers Vac. Trust, 463 U.S. 1, 23 (1983) ("the [ERISA] preemption clause is conspicuous for its breadth"). Section 1144(a) of ERISA has the effect of preempting any state statute dealing with benefit plans covered under ERISA "even if the law is not specifically designed to affect such plans, or the effect is only indirect." District of Columbia v. Greater Washington Bd of Trade, 506 U.S. 125 (1992).

Cintrón Parrilla v. Lilly Del Caribe, Inc., 32 F.Supp.2d 35, 37 (D.P.R. 1998)(emphasis added).

Bristol's ERISA-covered Severance Plan offers the same type of benefits as Law 80 (severance pay upon termination of employment)[4] and establishes the requirements to qualify for the benefit, the amount of the benefit, the way in which the benefit will be paid, among others. Compelling Bristol to pay severance benefits under Law 80 would force it to pay benefits under different circumstances, or in a different amount or form, than what is provided by the Severance Plan. This would cause Bristol to offer inconsistent severance benefits to employees in different states in which the corporation conducts operations, which is precisely what ERISA's preemption provisions intend to avoid. Consequently, a claim for severance pay under Law 80 such as Gautier's—which is a demand by an employee to his employer who has in place an ERISA covered severance plan—relates to an ERISA plan, and is thus preempted.

Furthermore, by asserting severance benefits under Law 80, Gautier is clearly attempting to use an alternate enforcement mechanism under state law to remedy a claim that falls within the scope of federal ERISA law. See e.g., Danca v. Private Health Care Sys., Inc., 185 F.3d 1 (1st Cir. 1999)(to establish ERISA preemption, defendant must show that the state cause of action falls within ERISA's civil enforcement provision; for this to occur, state law must be characterized as "alternative enforcement mechanism" of the terms of an ERISA plan); Tobin v. Nadeau, Civil No. A03-11817-DPW, 2004 WL 1922134 (D. Mass. Aug. 30, 2004) (citing Danca, supra, (court denied request to remand state law claim that "fit squarely" under ERISA Section 510, because the state law claim was an alternate enforcement mechanism under state law to remedy a claim under ERISA.)

Gautier's Act 80 claim seeks severance pay through a mechanism alternate to Bristol's ERISA covered severance plan which was established precisely for the purpose of paying severance benefits and as such, is preempted by ERISA. Gautier's entitlement to severance benefits can only be determined under

---

[4] Plus additional severance.

the terms of Bristol's ERISA covered Severance Plan.     Finallly, regardless of the fact that Gautier's claim under Act 80 is preempted, she has already received more than what she would have been entitled to receive through Act 80.  See Soto v. Corp. of Presiding Bishop of Church of Jesus Christ of Latter-Day Saints, 73 F.Supp.2d 116, 132 (D.P.R. 1999) (noting that a wrongful discharge claim under Law 80 must be dismissed when an employer pays an employee a termination pay equal or greater than the Law 80 indemnity). See also, Milan v. Centennial Communications Corp., 500 F.Supp.2d 14, 24-25 (D.P.R., 2007). Therefore, any claim that plaintiff could have under Act 80, should be dismissed.

### 4. DAMAGES

Plaintiff claims $300,000.00 in economic damages and also $1 million dollars in mental suffering and distress.  An emotional distress cause of action that hinges upon the same facts as an ERISA claim, like in Gautier's case, necessarily requires reference to, and analysis of, the ERISA plan. Otero v. Pharmacia Co., 466 F.3d 13, 20 (1st Cir. 2006).  The Supreme Court recognized as such and held that an ERISA plan beneficiary may not seek emotional distress damages purely because a plan administrator has wrongfully denied benefits to the beneficiary. Pilot Life Ins. Co., 481 U.S. at 47; see also Alamo v. MCS Life Ins. Co., 283 F.Supp.2d  459, 467 (D.P.R. 2003)(holding that ERISA preempts an article 1802 emotional distress claim that relates to an ERISA plan). Allowing Gautier to recover damages under an emotional distress claim would undermine "Congress's desire to avoid a 'patchwork scheme of regulation' " in the operation of benefit programs. McCoy v. Mass. Inst. of Tech., 950 F.2d 13, 18 (1st Cir. 1991); (quoting Fort Halifax Packing Co. v. Coyne, 482 U.S. 1, 11 (1987)); see also Mass. Mut. Life Ins. Co. v. Russell, 473 U.S. 134, 146 (1985) ("The six carefully integrated civil enforcement provisions found in § 502(a) of [ERISA] [29 U.S.C. § 1144(a)] as finally enacted ... provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly."). Therefore, Gautier's claim for emotional damages and distress is preempted and should be dismissed with prejudice. See also Rios-Coriano v. Hartford Life and Acc. Ins. Co., 642 F.Supp.2d 80, 84-85 (D.P.R., 2009).

ERISA section 502(a)(1)(B) does not authorize emotional distress damages; it entitles a plaintiff "to enforce his rights under the terms of the plan." In this case, the Plan does not authorize emotional distress damages. Gautier's only rights under the terms of the Severance Plan are to collect benefits suspended.  Moreover, ERISA does not generally authorize suits for extracontractual damages-that is, "damages separate from the benefits to which the plan documents entitle the participants-such as emotional distress or economic damages resulting from a plan's failure to honor it obligations." Evans v. Akers, 534 F.3d 65, 73 (1st Cir. 2008). Plaintiff's claim for emotional distress and economic damages should also be dismissed since they are not available remedies under ERISA. Jones v. Metropolitan Life Ins. Co., 729 F.Supp.2d 467, 473 (D.Mass.,2010).

**5.  VIOLATION OF FIDUCIARY DUTY**

Gautier also brings a cause of action against Bristol for an alleged violation of fiduciary duty. While plaintiff does not identify the statutory basis for this claim, she alleges that Bristol did not provide her with a copy of the Severance Plan nor informed her that the severance benefits were to be paid pursuant to the Severance Plan.  In sum, Gautier claims that Bristol never informed her of her rights under ERISA. As a remedy, Gautier claims that she is "entitled to equitable reliefs, including the payment of the amount due under the "general release agreement", or in the alternative to all the damages cause[d] by their acts as per the different causes of action before stated." See Amended Complaint at 23, ¶ 149.  In other words, what Gautier is seeking through her claim for violation of fiduciary duty are the benefits allegedly due to her under the Severance Plan. 29 U.S.C. § 1332(a)(1)(B).

Section 502(a)(2) of ERISA provides a cause of action to obtain appropriate relief under Section 409 for violations of fiduciary duty. Fiduciary liability claims under ERISA, however, are not intended to vindicate *individual* benefit rights, but rather should be used as instruments to obtain *plan-wide* relief. Furthermore, when there is adequate relief available for the alleged improper denial of benefits through filing suit under ERISA Section 502(a)(1)(B), a cause of action for breach of fiduciary duties is inappropriate.  See Massachusetts Mutual Life Ins. Co. v. Russell, 473 U.S. 134 (1985); Varity Corp. v.

Howe, 516 U.S. 489 (1996); Korotynska v. Metropolitan Life Ins. Co., 474 F.3d 101, 102 (4th Cir. 2006) ("individualized equitable relief under § 1132(a)(3) is normally appropriate only for injuries that do not find adequate redress in ERISA's other provisions. . . Because adequate relief is available for the plaintiff's injury through review of her individual benefits claim under § 1132(a)(1)(B), relief under § 1132(a)(3) will not lie."); Larocca v. Borden, 276 F.3d 22 (1st Cir. 2002); Katz v. Comprehensive Plan of Group Ins., 197 F.3d 1084 (11th Cir. 1999); Tolson v. Avondale Indus., Inc., 141 F.3d 604 (5th Cir. 1998); Wilkins v. Baptist Healthcare Sys., Inc., 150 F. 3d 609 (9th Cir. 1998); Turner v. Fallon Community Health Plan, Inc., 127 F.3d 196 (1st Cir. 1997); Forsyth v. Humana, Inc., 114 F. 3d 1467 (9th Cir. 1997); Wald v. Southwestern Bell Corp., 83 F.3d 1002 (8th Cir. 1996).

In a case dealing with fiduciary duties, the Supreme Court, after examining the legislative history of the statute, concluded that "[C]ongress did not intend...section [502] to authorize any relief except for the plan itself." Massachusetts Mutual Life Ins. v. Russell, 473 U.S. at 144. Such an award would be impermissible as it in no sense "inures to the benefit of the plan as a whole." See Coyne v. Blue Cross & Blue Shield of Virginia, 102 F.3d 712, 715 (4th Cir. 1996). This is so because the fiduciary duty provisions in ERISA are primarily concerned with protecting the integrity of the plan, which in turn protects all the beneficiaries, rather than remedying each wrong suffered by individual beneficiaries. See Russell, 473 U.S. at 142. See also LaRue v. DeWolff, Boberg & Associates, Inc., 458 F.3d 359, 362 (4th Cir. 2006). In other words, recovery under section 502 (a)(2) is limited to relief protecting the integrity of the plan as a whole. See id. at 144. See also Magin v. Monsanto Co., 420 F.3d 679, 687-688 (7th Cir. 2005); Dickerson v. Feldman 426 F. Supp. 2d 130, 135 (S.D.N.Y. 2006). The contrary would be the "quintessential example of relief that is not available under section 502(a)(2)." See Coyne, 102 F.3d at 715, quoting Massachusetts Mutual Life Ins. v. Russell, 473 U.S. at 140.

The case at bar presents an individual claim for benefits under an ERISA-regulated plan. None of plaintiff's allegations relate to obtaining any type of plan-wide relief. As such, the appropriate remedy is

that which is provided by ERISA Section 502(a)(1)(B).  <u>See</u> 29 U.S.C.A. § 1132(a)(1)(B). Therefore, plaintiff's claim for breach of fiduciary duties is inapposite, and should be dismissed.

Finally, as to Gautier's alternative claim for damages, ERISA does not provide a cause of action to recover compensatory or emotional damages, known as extracontractual damages. <u>Massachusetts Mut. Life Ins. Co. v. Russell</u>, 473 U.S. 134, 146 (1985) (holding that plaintiffs may not recover extracontractual damages for breach of fiduciary duty under ERISA's section 1132(a)(2)); <u>Drinkwater v. Metropolitan Life Ins. Co.</u>, 846 F.2d 821, 825 (1st Cir.1988) (holding that plaintiffs may not recover extracontractual damages for violations of any term or provision of the employee benefit plan under section 1132(a)(3)(b)).  State law claims for damages are preempted by ERISA. <u>See</u> 29 U.S .C. § 1144(a); <u>Alamo Rodriguez v. MSC Life Ins. Co.</u>, 283 F.Supp.2d 459, 467 (D.P.R.2003). Consequently, Gautier's claims for damages should be dismissed.

### 6.  INTERFERENCE WITH THE CONTRACT

As it is clear from Gautier's Amended Complaint, her count of interference with the contract is directed against BM Holdings and the Plan Administrator, not Bristol.  <u>See</u> Amended Complaint at 23-24, ¶¶ 151-154. Therefore, Gautier's claim of interference with the contract should be dismissed as to Bristol.

## C.  GAUTIER FAILED TO EXHAUST ADMINISTRATIVE REMEDIES

As noted above, although plaintiff failed once again to frame her Amended Complaint as a claim under ERISA and, rather, opted to assert a plethora of causes of action under state law, it is clear that she is, essentially, seeking to recover benefits allegedly due to her under the terms of the Severance Plan. 29 U.S.C. 1132(a)(1)(B). Specifically, plaintiff asserts that her Severance Plan payments were illegally suspended by Bristol.  But Gautier cannot bring this cause of action, inasmuch as she failed to exhaust administrative remedies provided for under the Severance Plan.

It is well established that, "barring exceptional circumstances, plaintiffs seeking a determination pursuant to ERISA of rights under [covered] plans *must . . . exhaust available administrative remedies under their ERISA governed plans before they may bring suit in federal court*." <u>Drinkwater v. Metro Life</u>

Ins., 846 F.2d 821, 826 (1st Cir. 1988) (emphasis ours).  See also Medina v. Metropolitan Life Insurance Company, 588 F.3d 41 (1st Cir. 2009) ("[a] plaintiff who wishes to raise an ERISA claim in federal court must first exhaust all administrative remedies that the fiduciary provides"); Madera v. Marsh USA, Inc., 426 F.3d 56, 61 (1st Cir.2005); Terry v. Bayer Corp., 145 F.3d 28 (1st Cir. 1998); Behanger v. Healthsource of Maine, 66 F.Supp.2d 70, 73 (D. Me. 1999) (explaining that ERISA plan participants seeking to recover benefits, enforce rights, or clarify future rights under the terms of the plan must exhaust administrative remedies available under plan before bringing action under ERISA).

To this effect, while ERISA does not expressly require an affected party to exhaust administrative remedies before filing suit, the statute does mandate that all welfare and pension plans have appeal and claims procedures. The relevant section of the statute specifically states:

> In accordance with regulations of the Secretary [of Labor], every employee benefits plan shall:
>
> (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
>
> (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied a full and fair review by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133.

In light of ERISA's  requirements, courts have reasoned that the inclusion of such provisions demonstrates a Congressional intent that those procedures be used *before* resorting to the courts.  The United States Court of Appeals for the First Circuit, together with almost every other Circuit Court, has followed that reasoning.  See Terry, 145 F.3d at 40; Drinkwater, 846 F.2d at 825-26 (citing cases).  To this end, "[w]hen an ERISA benefits plan clearly requires exhaustion, a claimant's failure to exhaust her administrative remedies *bars her from seeking relief in federal court. . . .*" Norris v. Citibank, N.A., 308 F.3d 880 (8th Cir. 2002).  See also Layes v. Mead Corp., 132 F.3d 1246 (8th Cir. 1998); Kennedy v.

Empire Blue Cross & Blue Shield, 989 F.2d 566 (2d Cir. 1993); Berger v. Edgewater Steel Co., 911 F.2d 911 (3d Cir. 1990); Simmons v. Wilcox, 911 F.2d 1077 (5th Cir. 1990).

In this case, plaintiff was provided with a copy of the Company's Severance Plan, see Exhibit E, which contains detailed information as to a participant's right to file an appeal if denied severance benefits, within sixty (60) days of the denial (or deemed denial) of benefits. See Exhibit F, Severance Plan at 13. Moreover, the Plan states, in pertinent part, under the "Legal Action" section, as follows:

> You may not bring a lawsuit to recover benefits under this Severance Plan until you have exhausted the internal administrative process described above.  No legal action may be commenced at all unless commenced no later than one (1) year following the issuance of a final decision on the claim for benefits, or the expiration of the appeal decision period if no decision is issued.  This one-year statute of limitations on suits for all benefits shall apply in any forum where you may initiate such a suit.

See Exhibit F, Severance Plan at 14.

Notwithstanding the foregoing, plaintiff failed to exhaust the Plan's internal review and appeal processes before filing the instant suit.  Therefore, it is respectfully submitted that plaintiff is barred from seeking relief under ERISA before this Honorable Court, and that her claims should be dismissed for failure to exhaust administrative remedies, under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

**D.     BRISTOL IS NOT THE PROPER PARTY DEFENDANT**

In the First Circuit, the proper party defendant in an action concerning ERISA benefits is the party that controls the administration of the plan. Cintrón–Serrano v. Bristol–Myers Squibb P. R., Inc., 497 F.Supp.2d 272, 275 (D.P.R.2007). There is an exception to this general rule: If an entity or person other than the named plan administrator takes on the responsibilities of the administrator, that entity may also be liable for benefits. Law v. Ernst & Young, 956 F.2d 364, 37-373 (1st Cir. 1992). However, "the mere exercise of physical control or the performance of mechanical administrative tasks generally is insufficient to confer fiduciary status." Beddall v. State St. Bank & Trust Co., 137 F3d 12, 18 (1st Cir. 1998); see also Terry, 145 F.3d at 35-36 (quoting a Department of Labor interpretive bulletin for the proposition that "an entity which merely processes claims 'is not a fiduciary because such person does not

have discretionary authority or discretionary control respecting management of the plan' " (quoting 29 C.F.R. §2509.75-8, D–2 (1997)). See Gomez-Gonzalez v. Rural Opportunities, Inc., 626 F.3d 654 (1st Cir. 2010).

As it is clearly stated in the Severance Plan, the Plan Administrator is Bristol Myers Squibb Company c/o Senior Vice President, Human Resources. See Exhibit F, Severance Plan at 16. In fact, the Plan Administrator specifically informed Gautier, in its letter dated September 7, 2010, that neither Bristol nor its Human Resources Department had any authority to make any decisions under the Severance Plan. See Exhibit F. Consequently, since Bristol is not the Plan Administrator, it is not the proper party defendant for Gautier's claim for benefits under the Severance Plan. The Amended Complaint should, therefore, be dismissed in its entirety for failure to state a claim upon which relief may be granted.

WHEREFORE, Bristol respectfully requests this Honorable Court to grant this Motion to Dismiss, and consequently, dismiss with prejudice the instant Complaint.

**RESPECTFULLY SUBMITTED**.

In San Juan, Puerto Rico, this 19th day of December, 2011.

WE HEREBY CERTIFY that on this date, we electronically filed the foregoing with the Clerk of the Court using the CM/ECF system. Parties may access this filing through the Court's system.

> **SCHUSTER AGUILÓ LLP**
> Attorneys for Defendant
> PO Box 363128
> San Juan, Puerto Rico 00936-3128
> Tel (787) 765-4646 / Fax (787) 765-4611
>
>
> **/s/ Lourdes Hernández Venegas**
> USDC-PR Bar No. 215507
> lhernandez@salawpr.com
>
>
> **/s/ Andrés C. Gorbea Del Valle**
> USDC-PR Bar No. 226313
> agorbea@salawpr.com